A.2d 369

**Catherine CORNBLETH**

v.

**Terry CORNBLETH, Appellant.**

Superior Court of Pennsylvania.

Argued May 1, 1990.

Filed Sept. 6, 1990.

Petition for Allowance of Appeal
Denied Jan. 14, 1991.

Eric C. Rome, Pittsburgh, for appellant.

Patricia G. Miller, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and POPOVICH and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from an order denying appellant's post trial relief in equitable distribution matters. Appellant raises seven numbered issues attacking the valuation of the parties pensions, valuation of the parties' residence, treatment of tax consequences, inclusion of appellant's pension in the marital estate and the treatment of a deduction from a money market account. We reverse the trial court's determination regarding the inclusion of a portion of appellant's pension in the marital estate and the valuation of the pension, in all other respects we affirm.

Appellant/husband and appellee/wife were married on February 2, 1963 and were divorced on January 13, 1987. Appellant is a clinical psychologist at the Veteran's Administration Hospital in Pittsburgh and at the time of trial was earning approximately $46,000 per year. Appellee is a professor at the State University of New York at Buffalo and was earning approximately $48,000 at the time of trial. Previously she held a similar position at the University of Pittsburgh. The parties stipulated to a separation date of December 31, 1983 and also stipulated to a seven percent growth rate for a number of assets. Among the assets in the marital estate were a variety of money market accounts and mutual fund accounts, municipal bonds, a residence and the parties' respective pension plans. The court approved an equitable distribution scheme which allowed each party to maintain possession of the property in their possession. However, this created a substantial imbalance in husband's

favor which the court offset by ordering a payment of $75,000 from husband to wife.

Appellant presents an interesting issue regarding the valuation of his pension. As a civil service employee participating in the Civil Service Retirement System (CSRS), appellant does not participate in Social Security. Furthermore, any eligibility for Social Security would result in a commensurate decrease in his pension annuity under the CSRA. 5 U.S.C. § 8349. Appellant argues that since, under federal law, Social Security retirement benefits can not be considered marital property, all or at least a portion of his CSRS pension should be similarly treated. We are inclined to agree that a portion of appellant's pension should be excluded from the marital estate.

The inclusion of pension benefits as marital property is derived from the fact that a pension is considered to be an asset of its owner. Although the benefit of the pension may be delayed until some future time, its value to the owner is undeniable. Further, a present value can be ascribed to it using mathematical techniques, thus providing a means for dividing its value. Further support for inclusion of a pension in the marital estate can be garnered from the fact that income earned during the marriage, which would otherwise become disposable to the couple, is most often utilized to fund the pension. Also, any employer contributions to the pension can easily be viewed as a form of delayed compensation. Of course, compensation of the parties during the marriage constitutes marital property. On the other hand, by virtue of federal policy, Social Security benefits, including retirement benefits, are excluded from treatment as marital property despite the fact that there is a tremendous degree of similarity in the nature of a Social Security retirement benefit and a conventional pension.

In assessing appellant's argument that all or part of his pension should be excluded from the marital estate due to his nonparticipation in Social Security, the trial court focused on the issue of whether federal law requires such

an approach and whether there is a preemption of state law by the federal one.[1] However, although, as aptly demonstrated by the trial court, there is no federal preemption obstacle in the way of considering appellant's pension a marital asset, this is only one part of the required analysis. There still remains a need to determine whether the pension should be considered a marital asset under the governing theories of our domestic relations law. In this respect, we have no difficulty in concluding that to the extent appellant's pension is similar to that of a conventional pension the portion of appellant's pension fairly characterized as the equivalent of a conventional pension should be included in the marital estate.[2] However, to the extent part of the pension might figuratively be considered "in lieu of" a Social Security benefit we believe that portion should be exempted from the marital estate.

■ One of our goals with regard to equitable distribution must be to treat different individuals with differing circumstances in a fashion so as to equate them to one another as nearly as possible, thus, eliminating a bias in favor of, or against, a class of individuals. To the extent individuals with Social Security benefits enjoy an exemption of that "asset" from equitable distribution we believe those individuals participating in the CSRS must, likewise, be so positioned. Consider for example an individual being divorced at approximately age fifty. Assuming a normal work history, that person will likely have accrued a substantial pension as well as a right to Social Security. When the pension is divided in equitable distribution there will be a diminution of the expected retirement income. However, the presence of Social Security will help offset the diminution. In contrast, an individual who was a civil service participant for many years will, if the trial court's approach

1. Previously, benefits under the CSRA were excluded from equitable distribution. However, in 1978 the Act was amended to allow such division. 5 U.S.C. § 8345(j)(1).

2. Indeed, this principle is firmly established in our law. See, *Braderman v. Braderman,* 339 Pa.Super. 185, 488 A.2d 613 (1985), *DeMasi v. DeMasi,* 366 Pa.Super. 19, 530 A.2d 871 (1987).

is approved, be dealt a double blow of sorts. The pension will become part of the marital estate and, thus, divided, yet there will be no Social Security benefit waiting to cushion this financial pitfall. The situation is exacerbated, thus providing a second "blow", in that the money that would, in a conventional setting, be routed into Social Security, and thus into an exempt status, would either have been consumed by the couple, thus providing previous benefits enjoyed by both, or, perhaps, routed into the CSRS or another retirement type vehicle, which, of course, would then be included in the marital estate.

In either scenario, a substantial stream of income which would be used to finance a future Social Security benefit,[3] which for most individuals is excluded from equitable distribution, is not similarly shielded for the CSRS participant. Thus, the CSRS participant is at a disadvantage when compared to the majority of the work force. Consequently, should equity prevail, this difference must be negated if we are to equate the CSRS participant with Social Security participants.

The present case itself establishes the inequity of positions. The parties to this action have both been employed for many years. Appellee has amassed a sizable pension along with the appellant. However, a portion of her income has also been routed into social security which is exempt from distribution. Further, she will reap the benefits of this routing of income at retirement. Had there not been a routing of this income into the Social Security program, the parties, as a married couple, would have benefitted either by having an increased disposable income or by saving the additional funds. Had the funds been saved or used to

---

**3.** Inherent to our disposition here is the realization that Social Security is, in essence, a forced savings plan. Essentially the federal government mandates that a portion of a worker's income, which as previously observed would otherwise be martial property, be saved away until the worker becomes eligible to collect it. By exempting Social Security from equitable distribution, the federal government has created not only a means where a married individual can shield marital property from division, but, essentially, has mandated such an action. Our decision here simply recognizes this fact and attempts to equate those workers in the CSRS with the rest of the work force.

purchase an asset that retained value, then that value would have been subject to equitable distribution. Conversely, had the funds been simply expended by the couple during their marriage there may not have been an asset to equitably divide. However, there would have been a present enjoyment of that stream of income by *both* parties during the course of the marriage. Thus, the exemption of this future income must be regarded as a benefit to appellee and a detriment to appellant. The approach espoused by appellee allows for an enjoyment of that stream of income by only herself.

To facilitate a process of equating CSRS participants and Social Security participants we believe it will be necessary to compute the present value of a Social Security benefit had the CSRS participant been participating in the Social Security system. This present value should then be deducted from the present value of the CSRS pension at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes. This process should result in equating, as near as possible, the two classes of individuals for equitable distribution purposes.

Appellant also challenges the method of valuation of his pension adopted by the trial court. Appellant and appellee both presented expert testimony regarding the valuation of the pension. However, the two experts came up with diverse results. Appellant's expert began with the monthly benefit figure *earned* through the time of separation, $725, assumed a retirement age of 60, applied the Pension Benefit Guarantee Corporation factor of 2.0951 and applicable tax ramifications and came up with a figure of $17,245. This figure was then appreciated at the agreed upon rate of 7% to arrive at a $23,357 figure at time of trial.

A coverture fraction was unnecessary as all of the pension earned, through the date of separation, was earned during the course of the marriage. Appellee's expert assumed service till age 60, thus deriving a monthly benefit figure of $2,130, applied the PBGC factor and then applied

a coverture fraction to adjust for the "marital" portion of the pension. This method of calculation resulted in a present value of $46,860. The trial court found this method of valuation the more credible. However, it appears that this method of evaluation is in conflict with that set forth in the cases of *DeMasi v. DeMasi*, 366 Pa.Super. 19, 530 A.2d 871 (1987) and *Lowry v. Lowry*, 375 Pa.Super. 382, 544 A.2d 972 (1988).

In *Lowry* we reaffirmed a position earlier taken in *DeMasi* regarding the proper approach to valuing pension plans. That approach called for the evaluation of a pension plan under the assumption that the pensioner was at retirement age at the time of separation. *DeMasi*, 530 A.2d at 886, *Lowry*, 544 A.2d at 982. In essence this method provides a value of the pension that had accrued during the marriage up to the time of separation only. It necessarily excludes the additional accruing of benefits and the compounding effect that is generally associated with continuing service and participation in a plan. This is essentially the approach utilized by appellant's expert witness.

In contrast, appellee's witness assumed service to normal retirement age which is in direct conflict with the recitations found in *DeMasi* and *Lowry*. Mathematically speaking, this will result in a higher figure than if the pension were valued under the *DeMasi* and *Lowry* guidelines because it assumes, essentially, that there was an even growth of the value of the pension. However, such an approach ignores the reality that the greater appreciation in value accrues at the tail end of any such plan and that the value of the plan can reach such levels only by including contributions occurring after the separation date. Applying a coverture fraction does not completely remove the valuation problem because such an approach does not take into consideration the compounding effect of the plan.[4]

4. In the present case, it is conceded that at the time of separation appellant had earned, under plan provisions, an annuity of $8,710. However, under appellee's expert's calculations the present value of appellant's annuity if he works to age 60 will be $11,271. (monthly

Consequently, it appears obvious from a review of *Lowry* and *DeMasi* that the valuation accepted by the trial court is not in conformity with those decisions. However, we note as well that the present value of the plan benefits under the *Lowry* guidelines was below the level of his contributions to the plan at the time of valuation. Inasmuch as appellant would be entitled to his contributions had he terminated his employment on the date of separation, we would see no reason that the pension should be valued at below that level for equitable distribution purposes. As our holding will require a remand for a redetermination of value of appellant's pension, we shall leave for the trial court to determine whether to accept the value of contributions or the present value of the defined benefits, assuming, of course, that this situation will still apply after adjustment for the Social Security factor discussed above.

For the reasons discussed above, we reverse that portion of the order appealed from which denies exempt status to a portion of appellant's pension which is equal to a Social Security benefit. We further vacate the equitable distribution scheme as presently ordered and remand for a redetermination of appellant's pension in accordance with this opinion. All other issues raised by appellant are affirmed.[5] Order affirmed in part and reversed in part. The order of equitable distribution is vacated and the case is remanded for the fashioning of a new equitable distribution in accordance with this opinion. Jurisdiction relinquished.

benefit of $2,130 multiplied by the coverture fraction of .441) The difference is directly attributable to the effect that the post separation contributions to the plan have on the overall value of the retirement benefit. However, these additional contributions cannot be considered marital property because they will not be made during the marriage. Under the guidelines of *DeMasi* and *Lowry* the effect of these post separation contributions are factored out to represent more closely the true value actually accrued during the marriage.

5. We rely, in affirmance, upon the opinion of the trial court with respect to these issues, which, we find, quite capably disposes of them.