**Janet M. SCHAFFNER**

v.

**Richard J. SCHAFFNER.**

**No. 96–506–Appeal.**

Supreme Court of Rhode Island.

May 25, 1998.

William F. Holt, Cranston, for Plaintiff.

Jerome J. Sweeney, III, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This case came before the Court on the appeal of the defendant, Richard J. Schaffner (Richard), from a Family Court decision pending entry of final judgment of divorce in favor of the plaintiff, Janet M. Schaffner (Janet). Richard challenges the trial justice's method of dividing his pension benefits and the trial justice's decision to defer distribution of those benefits. We affirm both of those determinations.

On June 16, 1973, Richard and Janet were married. They had one child of the marriage, Keri, who was born on December 16, 1976. Richard was throughout almost all the marriage employed by the federal government at the Social Security Administration. He is, in fact, still employed there. Janet was employed part time when she and Richard were first married, but when Keri was born, Janet's primary care-taking responsibilities prevented her from being continuously employed. She is currently working part time in Massachusetts while taking educational classes. At the time the decision in this case was entered, Richard was forty-eight years of age and Janet was forty-one.

When he began his federal employment, Richard voluntarily chose to opt out of the Social Security program and to enroll instead in the Civil Service Retirement System pension program (CSRS). By participating in that program, Richard relinquished his right to receive Social Security benefits upon retirement. In return for that relinquishment he received decreased deductions from his paychecks while he continued to work and increased pension benefits upon retirement. That arrangement, he apparently felt at the time, would ultimately benefit both himself and his then-wife, Janet.

The decision pending entry of final judgment of divorce entered by the Family Court provided for equal division of all marital assets, exclusive of the CSRS. It also required Richard to maintain health insurance for Janet's benefit for a period of two years. Furthermore, Janet's request for alimony was denied.[1] The trial justice additionally provided for an equal distribution of Richard's CSRS benefits until such time that Janet would begin to receive her Social Security benefits. When that does occur, Janet's portion of the CSRS benefits will be reduced by one half of her Social Security benefits. The trial justice deferred distribution of the CSRS pension benefits until Richard actually begins receiving them. Richard appealed from both the determination to divide his CSRS benefits equally and the decision to defer distribution of his CSRS benefits.

■ The equitable distribution of marital assets is within the discretion of the trial justice. *Stevenson v. Stevenson*, 511 A.2d 961, 964 (R.I.1986). "In reviewing the findings of a trial court, 'it is not our function to arrive at de novo findings and conclusions of fact based on the evidence presented at trial.'" *Moran v. Moran*, 612 A.2d 26, 33–34 (R.I.1992) (quoting *Casey v. Casey*, 494 A.2d 80, 82 (R.I.1985)). If the trial justice "did not overlook or misconceive material evidence, and if he [or she] considered all the requisite statutory elements, this court will not disturb the trial court's findings. *Cok v.*

*Cok*, 479 A.2d 1184, 1189 (R.I.1984)." *Thompson v. Thompson*, 642 A.2d 1160, 1162 (R.I.1994).

Richard's first argument on appeal is that the trial justice should have first deducted from the total amount of his CSRS benefits the amount that he would have received in Social Security benefits had he not decided to opt out of the Social Security system. The trial justice should have then divided the remaining balance between him and Janet. He justifies that reduction argument by asserting that Social Security benefits are not subject to equitable assignment in divorce proceedings, *Kirk v. Kirk*, 577 A.2d 976 (R.I. 1990), and that he is entitled to that same federally provided protection against equitable assignment because he contributed to the CSRS pension program in lieu of paying into the Social Security system.[2] Richard claims that his "hypothetical social security benefits" are akin to traditional Social Security benefits and that as a result he should be treated like "any other citizen of the United States."

■ Richard's argument is without merit. He *is* being treated like any other citizen who receives pension benefits. Pursuant to *Moran*, 612 A.2d at 32–33 and G.L.1956 § 15–5–16.1, retirement pension benefits are subject to equitable assignment upon divorce. Richard cannot and should not be treated like those who receive Social Security benefits because he voluntarily chose to opt out of the Social Security system and therefore is not entitled to claim its exemption from equitable assignment in his divorce case. It was his choice and decision to abandon the Social Security program and its exemption. He cannot now reasonably expect this Court to treat him as part of a group to which he does not belong simply because the voluntary decision he made some time ago no longer benefits him. Furthermore, because Janet has no equivalent retirement pension and can expect only a relatively insignificant Social Security benefit upon her retirement, it was certainly proper for the trial justice, in at-

---

1. Richard also was not awarded alimony.

2. The Federal Social Security Act, 42 U.S.C. §§ 407, 659(a), and 662(c) would exclude payments received as Social Security benefits from distribution in a division of marital property.

tempting to further his acknowledged goal of making an equitable distribution of the marital estate in this case, to factor in a portion of Richard's CSRS benefits that Richard now attempts to disguise as "hypothetical social security" benefits. Nothing in § 15–5–16.1 is intended to divest a Family Court trial justice of his or her discretion in choosing and applying the applicable and appropriate guideline set out in that statute and intended to provide for an equitable distribution of the marital estate in a divorce proceeding. The decision in *Cornbleth v. Cornbleth*, 397 Pa.Super. 421, 580 A.2d 369 (1990), cited by Richard in support of his position, is inapposite.

In *Cornbleth* both the husband and the wife had equal retirement pensions. The wife in *Cornbleth* was, in addition to her pension, eligible to receive Social Security. However, the husband in *Cornbleth*, like Richard, was ineligible for Social Security because he too had chosen to participate in the CSRS program in lieu of receiving Social Security benefits at retirement. Thus, the wife's receipt of Social Security benefits upset the equitable balance of marital assets between the husband and the wife. Therefore, the Pennsylvania court had to discount the husband's pension by the amount he would have received in Social Security if he had not chosen to participate in the CSRS program because, if the court had not done so, equitable distribution of the marital assets could not be achieved. The *Cornbleth* court explained that "[o]ne of our goals with regard to equitable distribution must be to treat different individuals with differing circumstances in a fashion so as to equate them to one another as nearly as possible." 580 A.2d at 371. Accordingly, the proposition *Cornbleth* stands for is not, as asserted by Richard, that hypothetical Social Security benefits *must* be deducted from CSRS benefits so that both those who receive Social Security benefits and those who do not receive Social Security benefits are treated equally. *Cornbleth* instead stands for the proposition that marital assets must be divided equitably and that Social Security benefits *may* be considered, although not actually divided, if in the court's reasoned judgment such consideration would help to achieve a more equitable distribution. That interpretation of *Cornbleth* is consistent with the decision in *McClain v. McClain*, 693 A.2d 1355 (Pa.Super.1997), which was later decided in the same jurisdiction as *Cornbleth*.

The court in *McClain* distinguished the *Cornbleth* decision because the husband and the wife in *McClain* were not entitled to comparable pensions as in *Cornbleth* and the wife in *McClain* expected only minimal Social Security benefits when she retired. In order to equalize the parties with respect to the marital assets, the court refused to deduct from the husband's CSRS pension benefits an amount equivalent to what the husband would have otherwise received from Social Security. As the court explained, "Clearly, it would be inequitable under the facts of this case to credit Husband with the value of hypothetical social security contributions when Wife, unlike the wives in *Cornbleth, Endy [v. Endy*, 412 Pa.Super. 398, 603 A.2d 641 (Pa.Super.1992) ], and *Schneeman [v. Schneeman*, 420 Pa.Super. 65, 615 A.2d 1369 (Pa.Super.1992) ], has no appreciable social security benefits of her own to balance against such a credit." *McClain*, 693 A.2d at 1359. That factual distinction made in *McClain*, which was decided in a jurisdiction where *Cornbleth* was controlling precedent, and that court's refusal to subtract hypothetical Social Security benefits from the husband's CSRS pension benefits certainly support our conclusion not to subtract hypothetical Social Security benefits from Richard's CSRS pension benefits because in this jurisdiction *Cornbleth* is at most only persuasive and not of any precedential value.[3]

---

3. In *Elhajj v. Elhajj*, 413 Pa.Super. 578, 605 A.2d 1268 (1992), also decided in the same jurisdiction as *Cornbleth v. Cornbleth*, 397 Pa.Super. 421, 580 A.2d 369 (1990), the court also distinguished *Cornbleth* on its facts wherein both the husband and the wife received CSRS pension benefits and neither received Social Security benefits.

"[I]n the present case, unlike *Cornbleth*, both Husband and Wife are participants in the Civil Service Retirement System. Neither Husband nor Wife pays social security taxes; neither Husband nor Wife is entitled to social security benefits. Hence, we conclude that the trial court has not committed an abuse of discretion by declining to extend the reasoning in *Corn-*

Additionally, the New Jersey court in *White v. White,* 284 N.J.Super. 300, 664 A.2d 1297 (Ch.1995), concluded that in order to distribute the marital assets between the husband and the wife more equitably, an amount representing what the husband hypothetically would have received in Social Security benefits should not be deducted from his CSRS pension benefits before the court distributed them. After distinguishing *Cornbleth,* the court in *White* further explained that "[t]he principal difficulty with an offset in this case is the difference in time when the parties will be eligible for their respective benefits." *Id.* 664 A.2d at 1299. We are confronted with that difficulty as well because Richard and Janet are not of comparable ages (Richard is seven years older than Janet), as were the parties in *Cornbleth.*

In the situation now before us, discounting Richard's CSRS benefits by the amount that but for his voluntary enrollment in the CSRS program he would have received in Social Security benefits would only achieve an inequitable distribution of marital assets. Unlike the wife in *Cornbleth,* Janet is not eligible to receive a pension upon retirement. Furthermore, her Social Security benefits are relatively insignificant when compared to Richard's pension or even to what his expert calculated to be his "hypothetical social security benefits." [4] Additionally, because she is much younger than Richard, her benefits will commence much later than Richard's benefits. Thus, the only way to provide for equitable distribution of the marital assets is to divide Richard's CSRS benefits equally and to take into account Janet's Social Security benefits when they commence, which is precisely what the Family Court justice has decided. Accordingly, because the marital assets cannot be equitably distributed in any other manner, we affirm the trial justice's marital asset distribution plan.

■■■ We also conclude that the trial justice's decision to defer distribution of the pension benefits, as opposed to ordering a present distribution, was the proper decision, given the facts and circumstances of this case. There are three methods of dividing retirement benefits:

"The *present value method* requires the trial court to determine the present value of the pension and compensate the non-pensioned spouse with other assets equal to his or her share in the pension.

"The *reserve jurisdiction method* allows the trial court to reserve jurisdiction to determine what the non-pensioned spouse will be entitled to once payment of benefits begins.

"Another method of valuation, the *deferred distribution method,* permits the trial court to determine the non-pensioned spouse's percentage interest in the pension benefits on dissolution of the marriage but to defer distribution of that spouse's share until the pensioned spouse retires." *In re Marriage of Kelm,* 878 P.2d 34, 36 (Colo. App.1994). (Emphasis added.)

■■■ Although the present value method is typically the preferred approach because it "effects a complete severance of the spouses' interests and gives each spouse immediate control of his or her share of the marital property," *DuBois v. DuBois,* 335 N.W.2d 503, 505 (Minn.1983), it is not always feasible under the facts of a particular case to award a lump-sum amount. Having insufficient other assets to pay the amount of the present value award is one reason distribution must be deferred. *See Krafick v. Krafick,* 234 Conn. 783, 663 A.2d 365, 374 (1995). Another situation in which the present value method is not the preferred distribution method is when " 'no present value can be established [by expert testimony] and the parties are unable to reach agreement' as to the value of the pension. *Kikkert v. Kikkert,* supra, 177 N.J.Super. at 478, 427 A.2d 76." *Krafick,* 663 A.2d at 374. Moreover, the deferred distribution method is proper when " 'the needs of the parties * * * militate

---

*bleth* to the present case." *Elhajj,* 605 A.2d at 1271.

Thus, *Cornbleth* has been distinguished on its facts more than once, and our doing so here is certainly not novel.

4. Janet's Social Security benefits are estimated to be $319 per month, and Richard's hypothetical Social Security benefits are estimated to be $586.97 per month.

against a present cash value method.' " *In re Marriage of Kelm,* 878 P.2d at 36.

The present value method could not have been feasibly utilized in this case. Although Richard had sufficient assets to pay any present value award of his CSRS benefits, he was clearly indecisive about the age at which he was going to retire. As a result, his expert's calculations regarding the monthly payments Richard was expected to receive upon retirement differed greatly from those of Janet's expert, who naturally picked a younger retirement age than Richard's expert.[5] Relying on Richard's inability to specify a definite retirement age and the resulting difficulty of determining an exact present value amount for Richard's CSRS pension benefits, the court had no choice but to defer distribution of the pension assets so that an accurate distribution amount could be calculated when the pension benefits actually commence. Accordingly, the distribution of pension assets was properly deferred.

For all the foregoing reasons, having discerned no error of law or abuse of discretion on the trial justice's part, Richard's appeal is denied and dismissed. The final judgment appealed from is affirmed, and the papers in this case are remanded to the Family Court.

---

5. The experts also differed in regard to the date for determining the discount/interest rate, which difference had only a relatively minimal impact on the experts' final results.