[Cite as *Runser v. Runser*, 2011-Ohio-3327.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JEFFREY C. RUNSER | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| BETH A. RUNSER | : | Case Nos. 2010CA00258 and |
| | : | 2010CA00317 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Stark County Court of
Common Pleas, Family Court Division,
Case No. 2008DR1060


JUDGMENT:        AFFIRMED IN PART; REVERSED AND
REMANDED IN PART


DATE OF JUDGMENT ENTRY:        June 27, 2011


APPEARANCES:

For Defendant-Appellant                For Plaintiff-Appellee

JOY S. WAGNER                          GREGORY J. RUFO
507 W. Park Avenue                     101 Central Plaza South
Barberton, OH 44203                    Suite 900
                                       Canton, OH 44702

*Delaney, J.*

{¶1}    Defendant-Appellant Beth A. Runser appeals the October 20, 2010 Final Decree of Divorce issued by the Stark County Court of Common Pleas, Family Court Division.

## STATEMENT OF THE FACTS AND CASE

{¶2}    Defendant-Appellant, Beth A. Runser and Plaintiff-Appellee, Jeffrey C. Runser were married on January 22, 1977.  The parties have six adult children.

{¶3}    Appellee filed a Complaint for Divorce on September 5, 2008.  Appellant filed her Answer and Counterclaim on October 16, 2008.  The matter came on for trial on February 17, 2010.  Below are the relevant facts to this appeal shown at the trial and stipulations made between the parties.

{¶4}    At the time of the divorce, Appellee was 64 years old and Appellant was 58 years old.

{¶5}    During the marriage, the parties resided in North Lawrence, Ohio.  The property was originally a 100-acre dairy farm; but at the time of trial, the property consisted of a home and 11 acres.

{¶6}    Appellee is employed by the U.S. Department of Agriculture as a food inspector.  Appellee's base salary is $60,097.00.  In 2009, Appellee's gross income was $85,279.04.  Appellee's gross income in 2008 was $89,893.57.  Appellee's Federal Employees Retirement System (FERS) account, or defined benefit plan, is valued at $228,963.54.  Appellee's Social Security was valued at $198,021.15 and when Appellee is eligible for benefits at age 66, he would receive approximately $1,797.00 per month.  Appellee also had a Thrift Savings Plan valued at $160,768.59.

{¶7} Appellant is employed by the State of Ohio at Heartland Behavioral Healthcare as a Psychiatric/MR Nurse. In 2009, Appellant had a gross income of $112,946.29. Appellant contributes to the Ohio Public Employees Retirement Systems (PERS) and her defined benefit plan is valued at $643,664.16. Appellant's Social Security is valued at $40,331.38. Appellant's estimated Social Security benefits at age 62 are approximately $512.00 per month. Appellant has a Deferred Compensation account and it is worth $25,741.80.

{¶8} In 1999, Appellant inherited real property located on Poplar Street in Canal Fulton, Ohio from her mother. When Appellant inherited the property, it was unencumbered by a mortgage. Appellant applied for a mortgage on the property in the amount of $85,000.00 from Calusa Investments, LLC in April 2007. Appellee signed the mortgage with Appellant because Appellant could not obtain financing on the property without Appellee as a co-signer. $64,647.76 of the mortgage was used to pay off various debts. The trial court determined the monies were used to satisfy Appellant's debts, including the loans on Appellant's 2000 Honda Civic DX and a 2002 Honda Accord purchased for the parties' daughter. The remaining proceeds of the mortgage were paid to Appellant.

{¶9} The note and mortgage on the Poplar Street home were assigned to Deutsche Bank National Trust. The mortgage went into default and a Complaint in Foreclosure was filed on October 11, 2007, naming both parties as defendants.

{¶10} Appellant filed a Chapter 13 Bankruptcy Petition in the U.S. Bankruptcy Court on November 13, 2008. The loan balance of $84,967.00 owed to Deutsche Bank National Trust is included in Appellant's Chapter 13 Plan.

{¶11}  After trial, the parties were requested to file Proposed Findings of Fact and Conclusions of Law.  Appellee filed Proposed Findings of Fact and Conclusions of Law, Appellant did not but filed a written Closing Argument.

{¶12}  The Magistrate issued a Decision on June 2, 2010.  In the Decision, the Magistrate made lengthy Findings of Fact.  Relevant to this appeal, the Magistrate thoroughly reviewed the parties' earnings and retirement benefits.  The Magistrate made the following Conclusions of Law:

{¶13}  "5. The real property located at 727 Popular [sic] St. Canal Fulton, OH 44614 is the separate property of the Defendant pursuant to O.R.C. 3105.171(A)(6)(a)(i).  Said property shall be retained by the Defendant pursuant to O.R.C. 3105.171(D) subject to the mortgage indebtedness which Defendant shall save the Plaintiff harmless from any liability therefrom.  Defendant shall cause the Plaintiffs [sic] name to be removed from the mortgage indebtedness prior to the completion of her Chapter 13 Plan if approved by the U.S. Bankruptcy Court but no later than twelve months following either the termination of the completion of the Plan.  * * *"

{¶14}  In dividing the marital assets, the Magistrate stated the distribution represented an equitable division of property in consideration of the factors listed in R.C. 3105.171(F), as well as the financial misconduct of the parties.[1]  The Magistrate equally divided Appellee's FERS Plan and Thrift Savings Plan and Appellant's PERS account and Ohio Deferred Compensation Plan.  The Magistrate addressed the parties' Social Security benefits in the Findings of Fact, but did not speak to them in the Conclusions of Law.

---

[1] The trial court concluded that both parties engaged in financial misconduct, resulting in Appellant being granted a greater award of marital property in the amount of $14,247.29.  Neither party appealed this issue.

{¶15}  The Magistrate listed Appellant's 2000 Honda Civic DX Sedan as a marital asset in the amount of $3,420.00 and equally divided the asset.

{¶16}  The Magistrate did not award either party spousal support.

{¶17}  The parties filed objections to the Magistrate's Decision.  The trial court held a hearing on the objections and overruled the objections of both parties on August 18, 2010.

{¶18}  Appellant appealed the August 18, 2010 judgment under Case No. 2010CA00258.

{¶19}  On October 20, 2010, the trial court granted the Final Decree of Divorce, which was identical in language to the Magistrate's Decision.

{¶20}  Appellant appealed the Final Decree of Divorce in Case No. 2010CA00317.  The cases were consolidated upon appeal.

## ASSIGNMENTS OF ERROR

{¶21}  Appellant raises three Assignments of Error:

{¶22}  "I. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT CONSIDERING APPELLEE'S SOCIAL SECURITY BENEFITS WHEN DIVIDING APPELLANT'S PUBLIC EMPLOYEES RETIREMENT SYSTEM PENSION.

{¶23}  "II. THE MAGISTRATE ERRED IN FAILING TO EQUALLY DIVIDE BETWEEN THE PARTIES THE DEUTSCHE BANK NATIONAL TRUST MORTGAGE IN THE AMOUNT OF $84,967.00 THAT IS SECURED BY THE POPLAR STREET PROPERTY.

{¶24}  "III. THE MAGISTRATE ERRED IN INCLUDING APPELLANT'S 2000 HONDA CIVIC DX SEDAN IN THE DIVISION OF ASSETS."

**I.**

{¶25} Appellant argues in her first Assignment of Error that the trial court erred in not considering Appellee's Social Security benefits when dividing Appellant's PERS pension. We disagree.

{¶26} In addressing the division of marital property, pension benefits accumulated during the marriage are assets subject to property division in a divorce action. *Erb v. Erb* (1996), 75 Ohio St.3d 18, 20, 661 N.E.2d 175. "When considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result." *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 559 N.E.2d 1292, paragraph one of syllabus. "The trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." Id., paragraph two of syllabus.

{¶27} The majority of Appellant's career has been with the State of Ohio, therefore earning her retirement benefits through PERS rather than Social Security. Appellee worked for the Federal Government and received federal retirement benefits that included Social Security. Appellant's Assignment of Error raises the issue of the "hypothetical Social Security offset" as it relates to public/private benefits (although in this case, it is public/public benefits). Appellant argues that because Appellee's Social Security benefits are not subject to division and Appellant's PERS benefits are subject

to division, and were in fact divided by the trial court, the trial court abused its discretion in not offsetting the value of the Social Security benefits.

{¶28} This Court recently addressed Social Security offset in *Obar v. Obar*, Ashland App. No. 09 COA 018, 2010-Ohio-1333. In *Obar*, the wife received monthly Social Security benefits due to disability. The husband was a State of Ohio employee and participated in PERS. The trial court ordered in the Final Decree of Divorce that the husband's PERS pension was a marital asset in the amount of $46,442.00 and awarded the wife $8,400.00 of the benefit. Id. at ¶11.

{¶29} The husband appealed, arguing the trial court erred in not considering the hypothetical Social Security offset against his PERS pension. In support of his argument, the husband cited to *Cornbleth v. Cornbleth* (1990), 397 P.A.Super. 421, 427, 580 A.2d 369, which states a method for calculating a hypothetical Social Security benefit for a party who has participated in a public retirement plan instead of Social Security so that a more equitable distribution of benefits can occur. The Ninth District Court of Appeals in *Stovall v. Stovall* (Sept, 23, 1992), Summit App. No. 15335, relied on the *Cornbleth* method where a spouse held a State Teachers' Retirement System pension.

{¶30} In *Obar*, we declined to adopt the *Cornbleth* method. We stated:

{¶31} "In *Bourjaily v. Bourjaily* (July 3, 2000), Licking App. No. 99 CA 120, 2000 WL 968509, the appellant argued that the trial court erred in failing to offset the value of his 'hypothetical' social security benefits against his civil service pension before dividing retirement benefits between the parties. The appellant, in *Bourjaily,* specifically noted

that the Ninth District Court of Appeals, in *Stovall v. Stovall,* (Sept. 23, 1992), Summit App. No. 15335, 1992 WL 236770, had relied on *Cornbleth.*

{¶32} "* * *

{¶33} "However, in *Bourjaily,* this Court overruled the appellant's assignment of error stating, in relevant part, as follows:

{¶34} "'However, as appellant concedes, the Ohio Supreme Court has not mandated the *Cornbleth* approach as the preferred method of addressing these types of private/public retirement benefit scenarios.  Moreover, our most recent ruling in this realm can be found in *Back v. Back* (Dec. 29, 1999), Richland App. No. 99 CA 46, unreported.  In that case, appellant wife was employed by the City of Mansfield and participated in PERS, the public employees' retirement plan.  Appellee husband worked for a waste management company, participating in social security but not in any pension plans. We held: Upon reconsideration, we find the trial court did not abuse its discretion in calculating the division of retirement benefits on remand even though the trial court did not follow the mandate of this court.  We conclude, as did the trial court, the proper division of retirement benefits is to subtract appellee's potential social security benefit from appellant's potential PERS benefit and divide the remaining portion of the potential monthly PERS benefit equally between the parties.  Id. at 2.' Id. at 2.

{¶35} "In sum, this Court has not adopted the *Cornbleth* method for addressing the public pension-social security issue for property division purposes.  We have adopted the setting off of the non-public pension spouse's social security benefits against the public employee spouse's public pension.  But, as the Ohio Supreme Court

in *Neville v. Neville,* 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, has stated, even this procedure is not a requirement.

{¶36}  "The cases appellant cites pre-date the Ohio Supreme Court's decision in *Neville.*   In *Neville,* the Court held that 'to make an equitable distribution of marital property, [the trial court] *may* consider the parties' future Social Security benefits in relation to all marital assets.'  (Emphasis added.)  Id. at paragraph 11.  As noted by the court in *Rorick v. Rorick,* Lorain App. No. 09CA009533, 2009-Ohio-3173, '*Neville* clearly does not mandate that the trial court consider Social Security benefits when equitably dividing marital assets.'  Id. at paragraph 12.

{¶37}  "Subsequent to *Neville,* R.C. 3105.171(F)(9) was adopted, effective April 7, 2009.  It states, 'In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors: * * *(9) Any retirement benefits of the spouse, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension, ...'   While *Neville* allowed social security benefits to be considered against all martial assets, this section limits social security benefits to be considered 'as may be relevant' in dividing public pensions.  This statute took effect only days before the decree in this case.  And this statute still seems to leave it to the discretion of the trial court as to whether to consider said benefits in dividing a public pension.  * * *"  Id. at ¶22-28.

{¶38}  Appellant in the present case asks this Court to revisit and reconsider our position in *Obar.*  Based on the facts of this case, we decline to do so.  The record shows that the trial court reviewed the parties' Social Security benefits in the Findings of

Fact. The trial did not find it appropriate to utilize an offset of the present value of the parties' respective future Social Security benefits given the particular circumstances of this case. We find no abuse of discretion by the trial court in determining the division of the retirement benefits.

{¶39} Appellant's first Assignment of Error is overruled.

**II.**

{¶40} Appellant argues in her second Assignment of Error that the trial court abused its discretion when it determined that the mortgage indebtedness on the Poplar Street home was Appellant's separate debt.

{¶41} Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall ... determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of evidence. *Zeefe v. Zeefe* (1998), 125 Ohio App.3d 600, 614, 709 N.E.2d 208. The characterization of property as separate or marital is a mixed question of law and fact, and the characterization must be supported by sufficient, credible evidence. *Chase-Carey v. Carey* (Aug. 26, 1999), Coshocton App. No. 99CA1, 1999 WL 770172. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse-of-discretion standard. See R.C. 3105.171(D). Although Ohio's divorce statutes do not generally articulate debt as an element of marital and separate property, the rules concerning

marital assets are usually applied to marital and separate debt as well. *Rowan v. Kemery*, Licking App. No. 10 CA 117, 2011-Ohio-2307 citing *Vergitz v. Vergitz,* Jefferson App.No. 05 JE 52, 2007–Ohio–1395, ¶ 12.

{¶42} When Appellant inherited the Poplar Street home from her mother in 1999, it was unencumbered by a mortgage. Appellant testified that beginning in 2005 or 2006, Appellee and Appellant kept their finances separate. (T. 186). Appellant applied for a mortgage on the Poplar Street home on April 11, 2007 because she stated she wanted to consolidate debt she had built up in her individual name. (T. 159). The mortgage company required Appellee to co-sign the mortgage. (T. 157). Appellee testified he was not aware of what the mortgage loan funds were used for because he did not have any access to the funds. (T. 62).

{¶43} At trial, the parties testified to Exhibit HH, the settlement statement for the Poplar Street home mortgage. The creditors listed in Section M, Disbursements to Others included a Citi Financial loan, Huntington National Bank loan, Credit Union of Ohio credit card, American Honda Finance, Wachovia, Home Shopping credit card, Victoria's Secret credit card, First Premier Bank credit card, Stark County Treasurer for property tax, and a Washington Mutual Provident credit card. (T. 66, 103-104, 136-137). The loan proceeds were also used to pay off Appellant's Honda Civic.

{¶44} Appellee testified he had never previously seen the settlement statement for the Poplar Street home mortgage and was unaware of what debts his wife had. (T. 66). Appellee stated the loans and credit cards were not in his name. (T. 103-104). He was unaware if Appellant used the money from the mortgage loan to pay any marital bills. (T. 105). Appellee believed the payment to the Stark County Treasurer was for

property taxes on the Poplar Street home because the property taxes on the North Lawrence home were current. (T. 104).

{¶45} Appellant testified she used the mortgage funds on "[v]arious things. Some household items. Um presents for the kids. Ah he didn't pay for any of her senior pictures. Clothing. Stuff for the family for the most part." (T. 137). Appellant could not specifically point to any item she purchased and used the mortgage loan proceeds to pay off that was used for marital purposes, other than furniture purchased with Citi Financial credit and a stove. (T. 159-164). Appellant testified the payment to Huntington National Bank was to pay off the Honda Accord purchased for the parties' 19 year-old daughter. (T. 164).

{¶46} Appellant filed for Chapter 13 bankruptcy protection on November 13, 2008. (T. 143). Listed in Schedule D are the creditors holding secure claims and it includes the Poplar Street mortgage in the amount of $84,967.00. (T. 142).

{¶47} Appellant argues the proceeds of the Poplar Street mortgage were used for the benefit of the marriage. However, the testimony shows the following: Appellant and Appellee kept their finances separate in 2005 or 2006; Appellant applied for the loan in 2007 but needed Appellee to co-sign the loan; the debt Appellant paid off with the loan only in her name; Appellee testified that he did not see the proceeds of the loan nor was he aware of the debt Appellant was paying off; Appellant could not identify what she used the loan proceeds for; and Appellant included the Poplar Street mortgage in her Chapter 13 bankruptcy proceeding.

{¶48} Under these facts, we find the trial court did not abuse its discretion to find there was clear and convincing evidence that the Poplar Street mortgage was Appellant's separate debt.

{¶49} Appellant's second Assignment of Error is overruled.

### III.

{¶50} In the Final Decree of Divorce, the trial court included Appellant's 2000 Honda Civic DX Sedan as a marital asset in the amount of $3,420.00. The parties stipulated that a portion of the mortgage proceeds on the Poplar Street home were used to pay off the loan on this vehicle. Appellant argues in her third Assignment of Error that if this Court finds that Appellant is wholly responsible for the mortgage loan on the Poplar Street home, then it was error for the trial court to equally divide the value of the vehicle in the property division.

{¶51} Appellant listed the 2000 Honda Civic as a marital asset in her written closing arguments to the trial court, but did footnote that if the trial court determined that the Poplar Street mortgage was not a marital debt, then the Honda Civic should not be considered a marital asset. Based on our ruling above that the Poplar Street mortgage is Appellant's separate debt and that the loan proceeds were used to pay off the loan on the Honda Civic, we find the trial court erred in finding the Honda Civic was a marital asset.

{¶52} Appellant's third Assignment of Error is sustained.

{¶53} Accordingly, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion and law.

By Delaney, J.

Gwin, P.J.  and

Hoffman, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JEFFREY C. RUNSER | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| BETH A. RUNSER | : | |
| | : | |
| Defendant-Appellant | : | Case Nos. 2010CA00258 and 2010CA00317 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed in part and reversed and remanded in part consistent with this opinion and law.

Appellant will pay 80% of the costs and Appellee will pay 20% of the costs.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN