[Cite as *Vanderink v. Vanderink*, 2018-Ohio-3328.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STEVEN HARVEY VANDERINK | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellant/Cross-Appellee | Hon. W. Scott Gwin, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 17 CA 0091 |
| ANDREA MATALOVA VANDERINK | |
| Defendant-Appellee/Cross-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:    Civil Appeal from the Court of Common Pleas, Case No. 2015 DR 01037 RPW


JUDGMENT:    Affirmed in Part; Reversed in Part and Remanded


DATE OF JUDGMENT ENTRY:    August 17, 2018


APPEARANCES:

For Plaintiff-Appellant

VICKY M. CHRISTIANSEN
JULIE K. FIX
CHRISTIANSEN CO., LPA
172 Hudson Avenue
Newark, Ohio 43055-5750

For Defendant-Appellee

ADAM K. VERNAU
VERNAU LAW LLC
1288 Brittany Hills Drive
Newark, Ohio 43055

*Wise, P. J.*

{¶1} Plaintiff-Appellant/Cross-Appellee (former husband) Steven Harvey Vanderink appeals from his divorce in the Licking County Court of Common Pleas, Domestic Relations Division. Defendant-Appellee/Cross-Appellant (former wife) is Andrea Matalova Vanderink. The relevant facts leading to this appeal are as follows.

{¶2} Appellant Steven and Appellee Andrea were married on June 24, 2011 in Licking County. After a period of negotiating, the parties had entered into a written antenuptial agreement in Columbus, Ohio, on June 23, 2011, the day before the wedding.

{¶3} The parties initially maintained a marital residence in Hebron, Ohio, and thereafter moved to Granville, Ohio. No children were born to the couple, although presently appellant has two adult children from a prior marriage and appellee has one adult child from a prior marriage.

{¶4} On September 21, 2015, Appellant Steven filed a complaint for divorce in the Licking County Court of Common Pleas, Domestic Relations Division ("trial court"). Appellee Andrea filed an answer and counterclaim on October 13, 2015.

{¶5} On May 17, 2016, appellant filed a motion for summary judgment. Appellee filed a response on June 14, 2016, and appellant filed a reply to the response on June 28, 2016.

{¶6} Shortly thereafter, the trial court issued a judgment entry regarding appellant's aforesaid motion for summary judgment. The court first noted that it had "previously ruled that the antenuptial agreement is valid and enforceable." Judgment Entry, July 5, 2016, at 2. The court further stated that the "critical issue is the meaning

and content of paragraph 3.01 of the antenuptial agreement ***." *Id.* This section of the agreement, as further discussed *infra*, essentially set forth the agreement between appellant and appellee concerning certain property each party owned prior to their marriage, which was listed in accompanying schedules (Steve's "A" and Andrea's "A" and "B"). The trial court also determined for purposes of summary judgment that because the agreement did not provide any definitions for separate property, marital property, and income, the court would utilize the definitions in R.C. 3105.171. *Id.* at 3. The court proceeded to deny the portion of appellant's motion for summary judgment seeking a determination that the annual incomes, bonuses, and employment benefits of each party earned during the marriage would remain his or her separate property. The remainder of appellant's summary judgment motion was also denied. *Id.* at 6.

{¶7} The divorce complaint and counterclaim proceeded to an evidentiary hearing before the trial court on December 20, 2016.

{¶8} The trial court issued a final decree of divorce on November 3, 2017, including a spreadsheet of assets and debts. Among other things, the trial court found the existence of assets totaling $2,671,984.28, exclusive of the marital residence. Of this, $819,396.28 in assets were found to be appellant's separate property, and $76,115.00 in assets were found to be appellee's separate property, leaving a total of $1,776,472.93 in marital property. The sole debt item was an automobile loan, found to be marital debt, of $93,970.00. The court ultimately distributed $935,221.47 of the marital assets to appellant, made him responsible for the auto loan, and distributed $841,251.46 of the marital assets to appellee. The court also awarded appellee spousal support in

the form of 50% of appellant's "Growth Partner Plan" bonuses which were earned in 2014, 2015, and 2016, but which were to be paid in 2017, 2018, and 2019.

{¶9} On November 30, 2017, Appellant Steven filed a notice of appeal, which we will herein treat as a challenge to both the summary judgment denial and the divorce decree. He herein raises the following four Assignments of Error:

{¶10} "I. THE TRIAL COURT ERRED IN INTERPRETING THE PARTIES' ANTENUPTIAL AGREEMENT.

{¶11} "II. THE TRIAL COURT ERRED IN DENYING HUSBAND'S MOTION FOR SUMMARY JUDGMENT REGARDING THE INTERPRETATION OF THE ANTENUPTIAL AGREEMENT.

{¶12} "III. THE TRIAL COURT ERRED IN AWARDING WIFE SPOUSAL SUPPORT IN THE FORM OF 50% OF HUSBAND'S GROWTH PARTNER PLAN BONUSES EARNED IN 2014, 2015, AND 2016.

{¶13} "IV. THE TRIAL COURT ERRED IN DENYING HUSBAND'S MOTION FOR DISTRIBUTIVE AWARD DUE TO WIFE'S FINANCIAL MISCONDUCT."

{¶14} In addition, Appellee Andrea has filed a cross-appeal in this matter. She herein raises the following two Assignments of Error on cross-appeal:

{¶15} "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED APPELLANT AN INCREASED SEPARATE PROPERTY CLAIM BASED UPON AN INCREASE IN PRE-MARITAL PROPERTY DUE TO PASSIVE APPRECIATEION [SIC] AND MARKET GAINS FOR WHICH THERE WAS NO EVIDENCE IN THE RECORD.

{¶16} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT CONSIDERING APPELLANT'S MARITAL SOCIAL SECURITY BENEFITS ACCRUED WHEN DIVIDING THE MARITAL PORTION OF APPELLEE'S PUBLIC EMPLOYEES RETIREMENT SYSTEM PENSION."

*Appellant Steven's Appeal*

I.

{¶17} In his First Assignment of Error, appellant argues the trial court erred in interpreting the parties' antenuptial agreement, particularly as to the question of marital versus separate property. We disagree.

{¶18} The test in Ohio for the validity of an antenuptial agreement is set forth in *Gross v. Gross* (1984), 11 Ohio St.3d 99, 464 N.E.2d 500: "Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce." *Id.,* at paragraph two of the syllabus.

{¶19} The validity of an antenuptial agreement is a question of fact for the trial court, and the trial court's decision will not be reversed absent an abuse of discretion. *Bisker v. Bisker* (1994), 69 Ohio St.3d 608, 609–610, 635 N.E.2d 308. We will affirm a trial court's decision regarding enforceability if the record contains competent evidence to support it. *Fletcher v. Fletcher* (1994), 68 Ohio St.3d 468, 628 N.E.2d 1343. Nonetheless, at the same time, prenuptial agreements are contracts, and the law of contracts will generally apply to their application and interpretation. As such, a trial court's

resolution of a legal issue is reviewed *de novo* on appeal. *Saari v. Saari*, 9th Dist. Lorain No. 08CA009507, 2009-Ohio-4940, ¶ 25, citing *Badger v. Badger* (Feb. 6, 2002), 9th Dist. No. 3197–M (internal quotations omitted).

**{¶20}** At this juncture, we find the issue before us essentially involves the legal interpretation of the 2011 antenuptial agreement, rather than any challenges to its overall validity. Accordingly, we will apply a *de novo* standard of review in our analysis of the present assigned error.

**{¶21}** The present focus of our attention is "Section 3.01" of the Agreement, which states as follows:

> Both parties to this Agreement agree that the property each party owned prior to their marriage which is listed in Schedule A and B hereby incorporated by reference as if fully set forth herein, and all property hereafter acquired by each party by gift, devise, bequest, inheritance, together with all appreciation, profits, rents, increases, and proceeds from all such properties and all substitutions for all such properties, shall remain as the sole and separate property of the respective parties and that each party shall retain absolute ownership of his or her respective property during the marriage, except as otherwise provided herein for the residence located at *** Hebron, Ohio.

**{¶22}** "Section 3.04" of the Agreement adds, in pertinent part:

> To the extent of property covered by Paragraph 3.01, it is mutually agreed that each party waives, discharges and releases any and all claims and rights, actual, inchoate, or contingent, in law and equity, which he or

she may acquire in the separately owned property of the other by reason of such marriage, whether the deceased party acquired the property prior to or during the marriage ***.[1]

**{¶23}** In addition, "Section 3.06" of the Agreement addresses the potential of a legal separation or termination of the marriage:

If the parties are divorced or their marriage is dissolved or annulled, or become legally separated (including filing for any of the same), both parties to this Agreement agree that all of each respective party's property described in Paragraph 3.01 of this Article shall remain as the sole and separate property of such respective party and each party shall retain absolute ownership of his or her respective property after such divorce, dissolution or annulment or legal separation.

**{¶24}** In a nutshell, appellant first maintains that these sections evince an intent of the parties, contrary to the trial court's conclusions, that there would be no limitation on additional contributions to the separate property items (or substitutions therefor) of each party, such items being defined as the listed property each party owned prior to the marriage, or property each party may have gained during the marriage by "gift, devise, bequest, [or] inheritance." Appellant likewise contends the phrase "retain absolute ownership *** during the marriage" demonstrates that the parties did *not* simply intend to protect their respective premarital assets and the passive appreciation from such premarital assets.

---

[1]  Section 3.04 contains additional language suggesting that its primary purpose is to address the possibility of the death of one of the parties, but it is not clearly designated as such.

**{¶25}** In practical terms, for example, appellant insists that his entire 401K plan and his entire non-qualified deferred compensation plan should have been awarded to him as his separate property, with no marital property component, on the theory that all of the "increase" to those accounts – including contributions he made during the marriage – remain his property under Section 3.01, *supra*. Instead, the trial court awarded him, as to the 401K and the deferred comp plan, a separate property award based on an assumed seven percent annual growth rate (compounded) on the premarital balances of the two plans, and then added one-half of the plans' remaining balances (his portion of the divisible marital property) as of the termination date of the marriage. *See* Divorce Decree at 3; Property Division Chart at 1.

**{¶26}** Appellant first asks us to consider, in addition to the aforesaid sections of the antenuptial agreement, the statement of the parties' intent set forth in "Section 1.01," which states that "[t]he parties to this Agreement intend and desire to define their respective rights in the property of the other and to avoid such interests which, except for the operation of this Agreement, they might acquire in the property of the other as incidents of their marriage relationship." Appellant posits that Section 1.01 is a "clear indication" that the parties did not intend to restrict the protection of the agreement to just their premarital assets and any *passive* appreciation thereon. Appellant's Brief at 9. Our reading of this preamble does not lead us to that conclusion; however, even if we concurred with appellant on this point, "*** when both general and specific provisions in a contract relate to the same subject, it is generally accepted that the specific provisions are controlling." *Consol. Rail Corp. v. Total Exp.*, 10th Dist. Franklin No. 88AP-237, 1988 WL 99357, citing *Ins. Co. of North America v. Wells* (1973), 35 Ohio App.2d 173.

**{¶27}** In the case *sub judice*, upon *de novo* review, we emphasize that Section 3.01 clearly provides that "separate property" shall include "all appreciation, profits, rents, increases, and proceeds" *from* each party's premarital properties (and "all substitutions for all such properties"). This wording can only logically refer to passive growth. The inclusion of the prepositional term "from" dispels appellant's present claim that the parties agreed to treat as separate property the growth of premarital accounts via funding by either party during the marriage. Furthermore, we do not find this language ambiguous to the extent that we would need to invoke the rule of *contra proferentum* and construe the provision against the drafter of the agreement.[2]

**{¶28}** Appellant next maintains the trial court erroneously determined that the parties' income and bonuses from employment during the marriage would be treated as marital property. A review of the schedules attached to the antenuptial agreement reveal a listing of a figure of $350,000.00 for appellant's "gross yearly employment income," a figure of $125,000.00 for his "year to date gross income" through May 31, 2011, and additional figures for his 2008, 2009, and 2010 "base income" and his overtime, commission and bonuses for those years, as well as a single figure of $92,000.00 for appellee's gross annual income from her employment. Despite this information in the schedules, the trial court determined that "the Agreement is silent as to the parties' incomes ***." Judgment Entry, July 5, 2016, at 5. Nonetheless, appellant in essence proposes that because the "separate property" schedules of the parties, attached to the

---

[2]   We note appellee disputes appellant's assertion that appellee's then-counsel drafted the entire antenuptial agreement.

antenuptial agreement, included figures for annual incomes, the parties' income and bonuses should all be treated as separate property.

**{¶29}** In broad terms, we first find appellant's present argument blurs the distinction between income and wealth. The United States Supreme Court has stated that the term "income" embodies the concept of accession to wealth. *See Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 431, 75 S.Ct. 473, 99 L. Ed. 483 (1955). In other words, as cogently stated by an Illinois court, "income represents a gain or profit that is generally understood to be a return on an investment of labor or capital, thereby increasing the recipient's wealth." *In re Marriage of Tegeler,* 365 Ill.App.3d 448, 455, 302 Ill.Dec. 173, 848 N.E.2d 173 (2006). The general rule in Ohio is that income earned by labor performed during the marriage is marital property whether received during or after the marriage. *Schweinfurth v. Meza*, 8th Dist. Cuyahoga No. 80506, 2002-Ohio-6316, ¶ 19; R.C. 3105.171(A)(3)(a)(iii).

**{¶30}** Furthermore, by assenting to an antenuptial agreement, "the prospective wife or husband waives any particular right arising out of the marriage contract, including statutory rights, where the agreement by its clear wording shows that such a result was intended." *In re Estate of Armstrong,* 4th Dist. Hocking No. 96 CA 3, 1997 WL 139441, citing *Troha v. Sneller* (1959), 169 Ohio St. 397, 159 N.E.2d 899, syllabus (internal quotations omitted). In this instance, upon review, we find that the written disclosure by the parties of recent gross incomes as of the time of the signing, in the schedules referenced in the antenuptial agreement, does not manifest an intention by the parties to treat their forward incomes earned during the marriage as separate "property," and had the parties so intended, we would find clear language to that effect in the agreement.

**{¶31}** Appellant lastly challenges the trial court's determination that the Agreement did not define "separate property" (Judgment Entry, July 5, 2016, at 3), and he urges that the decision of the trial court ultimately falls back on the statutory treatment of marital and separate property (*see* R.C. 3105.171), thus rendering the Agreement "meaningless." In support, he directs us to *Millstein v. Millstein*, 8th Dist. Cuyahoga No. 79617, 2002-Ohio-4783, wherein the Court stated that the "the very purpose of a prenuptial agreement [is] to avoid by contract the equitable distribution of property mandated by statute." *Id.* at ¶ 87. However, appellant's argument ignores the fact that other issues, not discussed at length herein, were agreed upon in the document, including handling of the marital residence and the equity therein, future estate matters, and application of Ohio law upon any relocation of the parties to another state.

**{¶32}** We find no error as a matter of law in the trial court's interpretation of the antenuptial agreement. The trial court's division of property is thus upheld, except as may be affected by our redress of the Third Assignment of Error. Appellant's First Assignment of Error is therefore overruled.

II.

**{¶33}** In his Second Assignment of Error, appellant contends the trial court erred in denying his motion for summary judgment regarding the interpretation of the antenuptial agreement.

**{¶34}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *See Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *."

**{¶35}** Generally, the denial of a motion for summary judgment is not a final appealable order; however, at least in some circumstances, a party may appeal a trial court's denial of a motion for summary judgment after a subsequent adverse judgment. *See City of Youngstown v. Washington*, 7th Dist. Mahoning No. 17 MA 0073, 2018-Ohio-1283, ¶ 36, citing *Balson v. Dodds*, 62 Ohio St.2d 287, 289, 405 N.E.2d 293 (1980). But we have held that any error by a trial court in denying a motion for summary judgment is rendered moot or harmless where the subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the non-moving party. *See In re D.N.O.*, 5th Dist. Stark No. 2012-CA-00239, 2013-Ohio-601, ¶ 36 (additional citations omitted). *See, also, True Light Christian Ministries Church v. Clear Channel Outdoor, Inc.*, 5th Dist. Stark No. 2003CA00128, 157 Ohio App.3d 198, 2004-Ohio-2539, ¶ 23.

**{¶36}** Based on our conclusions under Appellant's First Assignment of Error, the Second Assignment of Error is found to be moot.

III.

**{¶37}** In his Third Assignment of Error, appellant contends the trial court committed reversible error in establishing spousal support payable to appellee in the form of fifty percent of certain employment bonuses earned by appellant in 2014, 2015, and 2016. We agree.

**{¶38}** A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. *See Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N .E.2d 1140 (1983).

**{¶39}** In the case *sub judice*, the trial court ruled in pertinent part as follows: "[Appellee] is hereby awarded spousal support in the amount of one-half of Plaintiff's Growth Partner Plan bonuses earned in 2014, 2015 and 2016 which are due and payable in 2017, 2018 and 2019. The court finds this to be the most equitable way to disburse these monies and provide that each party will incur the tax benefits and/or costs associated with these payments." Divorce Decree at 9.

**{¶40}** We note the court reached its decision on this issue despite the following testimony from Dana Lavelle, CPA, who was called by appellee: "In my opinion [the Growth Partner Plan] is a balance sheet item. It is property to be divided. It's deferred. It's like any other retirement account or deferred compensation account and so therefore it needs to be divided as property." Tr. at 59.

**{¶41}** Appellant, drawing from his earlier argument, urges that because he provided numerical figures for his recent annual bonuses (as of 2011) on his Schedule

A of the antenuptial agreement (*see* Assignment of Error I, *supra*), the trial court's utilization of fifty percent of his 2014, 2015, and 2016 Growth Partner Plan bonuses as the amounts for his spousal support obligation contradicts the terms of Section 3.01 of the agreement, quoted *supra*, as well as Section 3.06, which directs that the property referenced in 3.01 "shall remain as [each party's] sole and separate property." However, appellant points to no language in the agreement specifically forbidding the use of his bonuses as the funding source of the spousal support provision.

{¶42} However, appellant next argues the trial court failed to properly consider R.C. 3105.18(C)(1)(a) through (n), which provides as follows in regard to a trial court's adjudication of the issue of spousal support:

(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court *shall* consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of

education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable.

**{¶43}** (Emphasis added).

**{¶44}** While R.C. 3105.18(C)(1), *supra,* does set forth fourteen factors the trial court must consider, if the court does not specifically address each factor in its order, a reviewing court will presume each factor was considered, absent evidence to the contrary. *Carroll v. Carroll,* 5th Dist. Delaware No. 2004–CAF–05035, 2004–Ohio–6710, ¶ 28, citing *Watkins v. Watkins,* 5th Dist. Muskingum No. CT 2001–0066, 2002–Ohio–4237, ¶ 21 (additional citations omitted). Similarly, "[w]hen a trial court indicates that it has reviewed the appropriate statutory factors, there is a strong presumption that the factors were indeed considered." *Mavity v. Mavity*, 12th Dist. Butler No. CA2000-12-244, 2002-Ohio-556.

**{¶45}** However, in this instance, the trial court not only made no mention of the spousal support statute or the factors therein, it quite clearly iterated an intention to "disburse" the Growth Partner bonus moneys in an equitable manner, all under the heading of spousal support, as quoted *supra*. Appellee presently concedes that "[t]his is not a situation where the court awarded sustenance spousal support due to a spouse's need for financial support." Appellee's Brief at 14. Upon appellant's challenge to the spousal support award, while the trial court's good intentions in crafting an equitable decision are not in question, we cannot ignore the General Assembly's mandate in R.C. 3105.18(C)(1) concerning consideration of the statutory factors.

**{¶46}** "Although a trial court has discretion when fashioning its spousal support award, it does not have discretion to disregard the statutory mandates that control spousal support." *Palazzo v. Palazzo*, 9th Dist. Summit No. 27932, 2016-Ohio-3041, ¶ 21. We are thus unable to presume the trial court properly applied R.C. 3105.18(C)(1) under the circumstances of the case *sub judice*, we therefore find the trial court erred in awarding spousal support via granting appellee one-half of the three years of appellant's Growth Partner bonuses.

**{¶47}** Appellant's Third Assignment of Error is therefore sustained, and the matter will be remanded for the court to reconsider the issue of spousal support under R.C. 3105.18(C)(1).

IV.

**{¶48}** In his Fourth Assignment of Error, appellant contends the trial court erred in failing to compensate him for appellee's alleged financial misconduct. We disagree.

**{¶49}** R.C. 3105.171(E)(4) directs that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."

**{¶50}** Appellant first directs us to evidence that in August 2015, shortly before appellant filed his divorce complaint, appellee transferred $55,400.00 from one Chase Bank account (held in the name of appellee and appellee's daughter) into a different Chase Bank account (also held in the name of appellee and her daughter). This was followed the next day by appellee's withdrawal of $56,000.00 from the second Chase account. *See* Tr. at 187 (testimony of appellant). According to the testimony, appellee did not re-deposit the money into an account of which appellant was aware. Tr. at 187-188. Appellant urges that this activity evinces an attempt by appellee to conceal marital funds.

**{¶51}** Appellant also points to evidence that appellee had been making bi-weekly deposits from her paycheck into an account held by appellee's daughter. Appellant eventually noticed that appellee's daughter (at the time an unemployed full-time student) had approximately $80,000.00 in her bank account. Tr. at 138.  Appellant testified at the divorce trial he had discovered a total of $57,634.00 in funds that appellee had removed from the parties' joint account and deposited into accounts in her daughter's name. *See* Tr. at 148.

**{¶52}** Appellant further maintains that appellee filed her 2015 income tax returns separately, in alleged violation of the trial court's restraining order, and thereafter refused to disclose the name of the accountant who assisted her in the filing. *See* Deposition of

Appellee at 61; Tr. at 177-178; February 8, 2016 Magistrate's Order. Appellant claimed over objection at trial that this caused him to incur an increased tax liability of $13,748.00. Tr. at 177-178. Appellant also notes numerous instances during appellee's deposition of her giving answers that were "completely evasive or non-responsive." Appellant's Brief at 26, citing Deposition of Appellee at numerous points. Finally, appellee admitted that she had removed items such as paintings and crystal ware, as well as various documents and receipts from the marital residence. Deposition of Appellee at 45-47, 99-101. Appellant presently contends her concealment of items made proper appraisal for property division impossible.

**{¶53}** We have held that "[f]inancial misconduct requires more than just dishonest behavior, it requires a wrongdoing that interferes with a spouse's property rights and results in profit to the wrongdoer from the alleged misconduct or stems from an intentional act meant to defeat the other spouse's distribution of assets." *Thomas v. Thomas*, 5th Dist. Delaware No. 11CAF090079, 2012-Ohio-2893, 974 N.E.2d 679, ¶ 63 (additional citations omitted).

**{¶54}** In this instance, we find the issue of the roughly $55,000.00 fund transfer was addressed in the division of property list attached to the divorce decree, where it is shown as a Schwab account with a balance of $55,585.00. *See* Tr. at 299. The trial court awarded appellee $39,000.00 as her premarital separate property on the Schwab account, and treated the remainder of the account as marital property. The transfer thus did not result in any loss to appellant, and it was not concealed in an untraceable account. As to the tax return issue, appellee testified that she completed her filing on February 5, 2016, three days before the magistrate's restraining order. *See* Tr. at 325-

326. Also, the court heard testimony that both parties removed many items of personal property from the marital residence, but said items were all accounted for by the parties in their testimony. *See* Tr. at 301-324. The trial court determined that both parties should simply retain the personal property in their own possession.

**{¶55}** Upon review of the record, without condoning some of appellee's actions, particularly her questionable handling of valuable items in the marital estate, we do not find the trial court erred or abused its discretion in awarding no compensation for financial misconduct by appellee and in dividing the parties' marital property accordingly. *See Koegel v. Koegel* (1982), 69 Ohio St.2d 355, 432 N.E.2d 206 (emphasizing that a trial judge should be given wide latitude in dividing property between the parties).

**{¶56}** Appellant's Fourth Assignment of Error is therefore overruled.

### *Appellee Andrea's Cross-Appeal*

### I.

**{¶57}** In her First Assignment of Error on cross-appeal, appellee argues the trial court erred in its calculation of the growth of appellant's deferred compensation account for purposes of determining appellant's separate property value. We disagree.

**{¶58}** Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall *** determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. * * *"

**{¶59}** Trial court decisions on what is presently separate and marital property are not reversed unless there is a showing of an abuse of discretion. *Valentine v. Valentine*, 5th Dist. Ashland No. 95COA01120, 1996 WL 72608, citing *Peck v. Peck*, 96 Ohio

App.3d 731, 734, 645 N.E.2d 1300 (12th Dist. 1994). In performing the function of property division, "the trial court has broad discretion to develop some measure of value." *Kess v. Kess*, 5th Dist. Delaware No. 15 CAF 10 0076, 2018-Ohio-1370, ¶ 41, citing *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982). Generally, as an appellate court, we are not the trier of fact. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 2010–Ohio–3489, 936 N.E.2d 1013 (5th Dist.), ¶ 16, citing *Cross Truck Equipment Co. v. Joseph A. Jeffries Co.*, 5th Dist. Stark No. CA–5758, 1982 WL 2911.

{¶60} The parties in this instance stipulated that appellant's deferred compensation plan had a pre-marital value of $234,095.00. Appellant's witness and financial planner, Richard Everhart, testified that a reasonable return on the investments he manages for appellant would be between seven percent and eight percent per year. Tr. at 102-103. The trial court ultimately determined the plan had increased in value to $636,301.00 at the time of the divorce, with $328,330.00 of that figure found to be appellant's separate property, based on Everhart's testimony that the $234,095.00 premarital investment would have grown at a rate of approximately seven percent per year, over the roughly four-year period of the marriage. *See* Tr. at 94-95. Decree at 3.

{¶61} Appellee challenges Everhart's testimony, contending the witness provided no records to show how the plan at issue had increased in value during the marriage, particularly any documentation regarding how much the plan value's growth was due to new contributions made during the marriage and earnings therefrom, versus growth from passive income and appreciation from pre-marital earnings. Everhart, who is not the

manager of the deferred compensation plan in question, noted on cross-examination that he did not trace what amounts were added to the plan during the marriage. Appellee thus urges that appellant failed to sustain his burden to overcome the presumption that all of the growth above the original $234,095.00 in the plan was marital. Nonetheless, we note appellee's own expert, Dana Lavelle, CPA, testified that he was likewise unable to directly trace the passive appreciation of the deferred compensation plan, noting his belief that "the data does not exist." Tr. at 40.

{¶62} Under the circumstances presented, we find no abuse of discretion in the trial court's reliance on the testimony to calculate a valuation for the separate property component of appellant's deferred compensation.[3]

{¶63} Appellee's First Assignment of Error on cross-appeal is therefore overruled.

II.

{¶64} In her Second Assignment of Error on cross-appeal, appellee contends the trial court abused its discretion in dividing the marital portion of her Ohio Public Employees Retirement System ("OPERS") pension. We disagree.

{¶65} In a marriage where one spouse has contributed to the social security retirement system and the other spouse to a government pension system, such as OPERS, a dilemma may arise in property division if the parties divorce: "Public employees, contributing to a government pension system, may be penalized because the portions of their pension equivalent to Social Security contributions are marital

---

[3] Appellant, in his response to the cross-appeal, again argues that the Agreement does not limit "increases" to passive growth, and that he was entitled to all of his deferred compensation account as his separate property. However, we have previously rejected appellant's position on this issue.

property subject to division, while their spouse's contributions to Social Security are not marital property under federal statute." *Thompson v. Thompson*, 11th Dist. Portage No. 2010-P-0058, 197 Ohio App.3d 610, 614, 2011-Ohio-6689, ¶ 18, quoting *DeChristefero v. DeChristefero,* 11th Dist. Trumbull No. 2001–T–0055, 2003-Ohio-3065, ¶ 29.

**{¶66}** In the case *sub judice*, appellee thus specifically challenges on cross-appeal the trial court's refusal to consider appellant's social security retirement benefits vis-à-vis her OPERS pension value. A number of Ohio courts have considered the issue appellee raises, commonly termed "hypothetical social security offset," sometimes looking to the analysis provided in a Pennsylvania case, *Cornbleth v. Cornbleth* (1990), 397 Pa.Super. 421, 580 A.2d 369. In essence, under the *Cornbleth* method, the trial court adjusts the value of the public employee's pension to exclude a calculated "hypothetical social security" figure, *i.e.*, that part of the public pension which might, figuratively, be considered in lieu of social security benefits. *See Stovall v. Stovall*, 9th Dist. Summit No. 15335, 1992 WL 236770.

**{¶67}** Nonetheless, in *Bourjaily v. Bourjaily*, 5th Dist. Licking No. 99 CA 120, 2000 WL 968509, we declined to mandate the *Cornbleth* method, and instead cited to our decision in *Back v. Back*, 5th Dist. Richland No. 99 CA 46, 2000 WL 1622, where we had concluded that the "proper division of retirement benefits" involved subtracting the private sector spouse's potential social security benefit from the public employee's potential PERS benefit and dividing the remaining portion of the potential monthly PERS benefit equally between the parties.

**{¶68}** However, since that time, the Ohio Supreme Court held in *Neville v. Neville,* 99 Ohio St.3d 275, 278-279, 2003-Ohio-3624, 791 N.E.2d 434 that "to make an equitable

distribution of marital property, [the trial court] *may* consider the parties' future Social Security benefits in relation to all marital assets." (Emphasis added.) Then, several years after *Neville*, the General Assembly enacted R.C. 3105.171(F)(9), which states that "[i]n making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider *** [a]ny retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension."

**{¶69}** Accordingly, this Court has now taken the position that R.C. 3105.171(F)(9) "still seems to leave it to the discretion of the trial court as to whether to consider [social security] said benefits in dividing a public pension." *See Obar v. Obar,* 5th Dist. Ashland No. 09 COA 018, 2010–Ohio–1333, ¶ 28; *Runser v. Runser*, 5th Dist. Stark No. 2010CA00258, 2011-Ohio-3327, ¶ 37.

**{¶70}** In the case *sub judice*, it is undisputed that appellee is a participant in OPERS. The parties stipulated to the court that appellee had a separate property claim for the pre-marital value of her OPERS account in the amount of $37,115.00, while the total value of her account was $55,254.00. *See* Record at 132, Exhibit A. Appellee's witness, Dana Lavelle, testified that he calculated the value of appellant's marital Social Security offset, and he determined that the value of appellant's marital social security retirement benefits exceeded the value of appellee's marital OPERS benefits, and therefore it would be possible to completely offset appellee's marital OPERS benefits with the marital value of appellant's social security retirement benefits. Tr. at 40-44; Exhibit A at 9.

**{¶71}**  The trial court explained its decision on this issue as follows: "The court has considered the factors set forth in ORC 3105.171(F)(9). Based upon the ages of the parties and the speculative nature of the value of the Plaintiff's future social security benefits, the court does not find an offset of the value of the Defendant's OPERS against any social security benefits Plaintiff might receive to be appropriate or equitable." Divorce Decree at 5.

**{¶72}**  Simply stated, the goal of any property division a court orders is equity. *See Hardy v. Hardy*, 2nd Dist. Montgomery No. 22964, 2010-Ohio-561, ¶ 14. In light of our holdings in *Obar* and *Runser*, *supra*, we find no abuse of discretion in the trial court's decision as to the distribution of retirement benefits.

**{¶73}**  Appellee's Second Assignment of Error on cross-appeal is overruled.

**{¶74}**  For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, Licking County, Ohio, is hereby affirmed in part, reversed in part, and remanded.

By: Wise, P. J.

Gwin, J., and

Delaney, J., concur.


JWW/d 0725