[Cite as *Seipelt v. Seipelt*, 2023-Ohio-4468.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

ROBERT LEW SEIPELT III,　　　　　　　:

　　　Appellant,　　　　　　　　　　　:　　　　　CASE NO. CA2023-02-018

　　　　　　　　　　　　　　　　　　　:　　　　　O P I N I O N
- vs -　　　　　　　　　　　　　　　　　　　　　　　12/11/2023
　　　　　　　　　　　　　　　　　　　:

ALYSON JORDAN SEIPELT,　　　　　　　:

　　　Appellee.　　　　　　　　　　　:

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR20070481

DeBra Law, LLC, and Ryan L. DeBra, for appellant.

Holcomb and Hyde, LLC, and Richard A. Hyde, for appellee.

**PIPER, J.**

{¶ 1} The Butler County Court of Common Pleas, Domestic Relations Division, issued a decree of divorce to Robert Seipelt ("Husband") and Alyson Seipelt ("Wife"). Husband appeals the trial court's decision that certain property was marital property and not his separate property.

**Factual Background**

**{¶ 2}** Husband and Wife were married on July 21, 2017. Prior to the marriage, the parties entered into a prenuptial agreement.[1] The prenuptial agreement included two schedules identified as Schedule A1 and Schedule A2, listing the parties' separate property. Schedule A1 lists the separate property of Husband, including:

> All individually owned bank accounts including: *Fifth Third Bank accounts: Checking X9953*, Checking X8346, Savings X3300, Savings X8338. Chase Bank accounts: Checking X0129, Savings X2877.

(Emphasis added).

**{¶ 3}** On September 30, 2020, Husband filed a complaint for divorce along with a motion to enforce the prenuptial agreement. Following a hearing, the trial court issued a decision finding the prenuptial agreement valid and enforceable after analyzing the factors set forth by the supreme court in *Gross v. Gross*, 11 Ohio St.3d 99 (1984).[2]

**{¶ 4}** The trial court held a final hearing on April 19, 2022, as the parties could not agree on how certain property should be divided. At the time of the divorce proceedings, there were several accounts listed in Husband's name that were not listed in the prenuptial agreement.

**{¶ 5}** The record shows that Husband and Wife both maintained joint accounts and separate accounts during the marriage. Husband was primarily responsible for managing the payment of the parties' expenses. He testified that he would pay the expenses from his separate accounts or from his credit cards. Primarily, Husband testified about his use of the Fifth Third Bank account 9953.

---

1. The record shows Husband obtained the prenuptial agreement format online.

2. In *Gross*, the court held that prenuptial agreements are valid and enforceable: "(1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce." *Id.* at paragraph two of the syllabus.

{¶ 6} The Fifth Third Bank account 9953 is listed in the prenuptial agreement as Husband's separate property although the balance of the account was not included. The record shows that funds were deposited and withdrawn from Fifth Third Bank account 9953 during the marriage. For example, Husband testified that he was employed, and his income was deposited into his Fifth Third Bank account 9953. Husband also testified that Wife would deposit money into the parties' joint account, which he would then transfer to his Fifth Third Bank account 9953.

{¶ 7} It is undisputed that Husband opened several accounts after he married Wife. Husband had an Ally Bank account with a value of $57,850.38 and a General Electric Credit Union ("GECU") account with a value of $23,103.10.[3] Husband sought to establish that the Ally Bank and GECU accounts were his own separate property. He maintained that the Ally Bank and GECU accounts should be considered his separate property because the accounts were funded by contributions from Fifth Third Bank account 9953.

{¶ 8} Following the hearing, the trial court issued a decision regarding the division of marital and separate property. The trial court classified the Fifth Third Bank account 9953 (with its remaining funds) as Husband's separate property. However, it denied Husband's claim that the Ally Bank and GECU accounts were his separate property. Specifically, the trial court found:

> Husband was not persuasive in his claim of identifying separate property for [Ally account] * * * or [GECU account]. He failed to show he possesses a non-marital interest in the financial accounts and they are marital property.

{¶ 9} The trial court also classified half the value of the paydown on the mortgage as marital property. After classifying and dividing the property, the trial court issued a final decree of divorce. Husband now appeals, raising a single assignment of error for review.

---

3. These are the figures used by the trial court, which are not contested on appeal.

**Appeal**

{¶ 10} THE TRIAL COURT ERRED IN FINDING THE ALLY BANK ACCOUNT AND GECU ACCOUNT TO BE MARITAL PROPERTY.

{¶ 11} Husband's sole assignment of error alleges the trial court erred in classifying his Ally Bank and GECU accounts as marital property. In divorce proceedings, a trial court must determine what constitutes marital property and what constitutes separate property, and then equitably divide the marital and separate property between the spouses in accordance with R.C. 3105.171(B). *Bauer v. Bauer*, 12th Dist. Warren Nos. CA2019-04-033 and CA2019-04-040, 2020-Ohio-425, ¶ 21. An appellate court reviews the classification of property as marital or separate under the manifest-weight-of-the-evidence standard and will not reverse a trial court's classification if it is supported by competent and credible evidence. *Bozhenov v. Pivovarova*, 12th Dist. Clermont No. CA2022-11-080, 2023-Ohio-2437, ¶ 11.

{¶ 12} Marital property generally includes all property acquired by either party during the marriage as well as the appreciation of separate property due to the labor, monetary, or in-kind contributions of either party during the marriage. R.C. 3105.171(A)(3)(a)(i) and (iii). Marital property is to be divided equally in general, and each spouse is considered to have contributed equally to the acquisition of marital property. R.C. 3105.171(C)(1) and (2). However, marital property does not include separate property. R.C. 3105.171(A)(3)(b). Separate property includes property that is excluded by a valid prenuptial agreement. R.C. 3105.171(A)(6)(a)(v); *Avent v. Avent*, 6th Dist. Lucas No. L-05-1140, 2006-Ohio-1861, ¶ 15.

## I. Ally Bank and GECU Accounts

{¶ 13} The trial court found the parties had a valid prenuptial agreement, however, the Ally Bank and GECU accounts were not listed therein. Husband sought to establish

that he funded the Ally Bank and GECU accounts with transfers of separate property from the Fifth Third Bank account 9953. The trial court found Husband's claims to be unpersuasive. On appeal, Husband maintains that the funds contained in the Ally Bank and GECU accounts were fully traced back to the Fifth Third Bank account 9953, and therefore the court erred by classifying the Ally Bank and GECU accounts as marital property.

{¶ 14} R.C. 3105.171(A)(6)(b) requires that any claims of separate property must be successfully traced. "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." C*asper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 16. "The characterization of the parties' property is a factual inquiry and will not be reversed where supported by some competent, credible evidence." *Chaney v. Chaney*, 12th Dist. Warren No. CA2021-09-087, 2022-Ohio-1442, ¶ 20.

{¶ 15} In this case, Husband sought to establish that he used the Fifth Third Bank account 9953 to fund the Ally Bank and GECU accounts. Husband maintains that because the Fifth Third Bank account 9953 is listed as his separate property in the prenuptial agreement that it should be considered separate property for purposes of funding the Ally Bank and GECU accounts. However, despite Husband's arguments, it is undisputed that Husband's employment income was deposited into the Fifth Third Bank account 9953. He also transferred funds from the joint account with Wife into the same Fifth Third Bank 9953 account.

{¶ 16} While Husband argues that the Fifth Third Bank account 9953 is listed in the prenuptial agreement, there is no provision in that agreement evincing any intent of the parties to treat their incomes earned during the marriage as separate property. It is clear

from Husband's testimony that he relies on an overly broad interpretation of the prenuptial agreement. "The general rule in Ohio is that income earned by labor performed during the marriage is marital property." *Vanderink v. Vanderink*, 5th Dist. Licking No. 17 CA 0091, 2018-Ohio-3328, ¶ 29. While a prenuptial agreement permits the waiver of rights arising out of a marriage contract, the agreement must be clear in its wording that "such a result was intended." *Id.* at ¶ 30.

{¶ 17} Merely because Husband's income was deposited in an account he listed as his separate property, does not mean that the parties intended for their incomes earned during marriage to be considered separate property. The prenuptial agreement must manifest an intention for the parties to treat their incomes earned during the marriage as separate property. *See Vanderink* at ¶ 29-30. Since, the agreement does not do so, we are guided by the general rule that income earned during the marriage is considered marital property. *Id.* at ¶ 30.[4]

{¶ 18} In order to have the Ally Bank and GECU accounts classified as separate property, Husband had the burden of proof to trace the assets to his separate property. *Casper*, 2013-Ohio-4329 at ¶ 16. Although Husband points to several transactions from the Fifth Third Bank account 9953 as being the source of the funds for the Ally Bank and GECU accounts, we are unable to ascertain whether those transfers are separate property or marital property. Accordingly, Husband has not demonstrated that the funds used to fund the Ally Bank and GECU accounts were traceable to his separate property.

{¶ 19} Husband makes one more argument with respect to the GECU account alone. The trial court stated that for purposes of making a property division, the period of time

---

4. The other marital property contained in the account, i.e., the money transferred from the joint account, is not meaningfully addressed by either party.

during the marriage was July 21, 2017 through June 30, 2020. Husband notes, however, that the GECU account was opened in February of 2021. Husband asserts that because the account was opened after "the term of the marriage had expired" that the GECU account is his separate property calling it "dispositive" to his claim. However, that is simply not the case.[5] While Husband may have opened the account at a later date, the issue in this case was how Husband funded the GECU account, i.e., whether he could trace those funds to his separate property. The trial court ruled that Husband was not persuasive in his claim that the GECU account was derived from his separate funds. We agree with that determination, as Husband failed to demonstrate his separate property funded the GECU account.

{¶ 20} Considering the foregoing, we find there is competent, credible evidence to support the trial court's factual determination with regard to the classification of the Ally Bank and GECU accounts. As a result, the trial court's classification of those accounts as marital property is supported by the manifest weight of the evidence.

## II. Equitable Distribution

{¶ 21} Although Husband presents only one assignment of error stating the trial court erred by finding that the Ally Bank and GECU accounts were marital property, he raises one last issue at the end of his brief arguing "a distributive award was improper as the parties contractually agreed to release themselves from equitable distribution laws." He argues

---

5. Husband provides no authority supporting his "dispositive" claim in his opening brief. He references R.C. 3105.171(A)(6)(a)(vii) that separate property includes "[a]ny gift of any real or personal property * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." But there is no evidence that the GECU account was funded with a gift. Husband's own brief acknowledges that the GECU account was funded with the Fifth Third Bank account 9953. In his reply brief, Husband argues that the trial court, at least, should have valued the account at the time closest to the "marriage ending date," which he says was $400. However, an appellant may not raise new arguments or issues in his reply brief. *Eckert v. Warren Cty. Rural Bd. of Zoning Appeals*, 12th Dist. Warren Nos. CA2017-06-095 and CA2017-07-107 thru CA2017-07-109, 2018-Ohio-4384, ¶ 56.

that the parties' prenuptial agreement "is quite clear that it was the parties' intention to forego equitable distribution law and distribute said property according to how the property is titled." Husband restates the following provisions contained in the prenuptial agreement:

MATRIMONIAL PROPERTY RELEASE

9. The parties covenant and agree that they are aware of the equitable distribution laws of the State of Ohio, and that it is their intention that the equitable distribution laws will not apply to the status, ownership, interest and division of their property, either jointly or separately owned, nor to their future property, whether real or personal, and owned by either one or both of them, and the Parties further covenant and agree that it is their desire and intent by the terms of this Agreement to contract out of the equitable distribution laws of the State of Ohio, and to make a full and final settlement of all matter of property, both real and personal, previously and presently owned by either of the Parties or to be acquired by either of the Parties in the future.

DOWER, CURTESY, AND HOMESTEAD RELEASE

10. Each Party releases all dower, curtesy and homestead rights under any statute of the State of Ohio, or any other jurisdiction whatsoever, that, but for this agreement, each would have in and to property in the name of the other, or in their names jointly or as tenants in common.

{¶ 22} A prenuptial agreement is ultimately a contract entered into between a man and a woman in contemplation, and in consideration, of their future marriage. *Gross v. Gross*, 11 Ohio St.3d 99, 102 (1984). As such, the law of contract applies to the interpretation and application of prenuptial agreements. *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 467 (1994). "In order to declare the existence of a contract, both parties to the contract must consent to its terms[,] there must be a meeting of the minds of both parties[,] and the contract must be definite and certain." (Citations omitted.) *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991).

{¶ 23} In this case, the trial court found that the prenuptial agreement provided "no specific direction or indication or contemplation" concerning the paydown of the mortgage

and therefore the court classified the mortgage paydown as marital property. The trial court also found that the Ally Bank and GECU accounts were marital property after concluding that Husband was unpersuasive in his claim identifying them as separate property. The trial court stated that it considered all relevant factors, including those set forth in R.C. 3105.171(F), added up the marital property, and divided the property equally.

{¶ 24} It is unclear how Husband would have had the trial court divide the property not addressed by the prenuptial agreement. On appeal, he offers only conclusory arguments that the parties "intended to forego equitable distribution law and distribute said property how the property is titled." How the property was "titled," however, was the exact issue the trial court confronted below. Some property, such as the Ally Bank and GECU accounts, was not in existence at the time the parties signed the prenuptial agreement. Other property interests, such as the paydown of the mortgage, were not contemplated by the agreement. The trial court heard competing testimony concerning the parties' financial contributions during the marriage and issued its decision accordingly. The trial court was in the best position to weigh credibility and determine the factual matters presented below. *McCarty v. McCarty*, 12th Dist. Warren Nos. CA2016-07-055 and CA2016-07-056, 2017-Ohio-5852, ¶ 59. Upon review of the record, we find the trial court did not err in its classification of the parties' property or in the way it divided the marital property. Husband's sole assignment of error is overruled.

{¶ 25} Judgment affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.